Numbers 21-1729 and 3325. Mr. Painter and Ms. Seiden. Am I putting the record in, Your Honors. May it please this court, my name is Robert Painter. I am an attorney with the American Friends Service Committee in Newark, New Jersey and I represent petitioner in these two cases. I would ask to reserve three minutes of my time for rebuttal. That's fine. Do you wish to focus most of your argument on the petition to review or on the petition to reopen? The petition to reopen, Your Honor. Okay. Well, we'll come back to the petition for review. Then why don't you start with that? Okay. The petition to reopen. Your Honors, these cases involve the request for protection in the U.S. by Archon Sanford, a Haitian national who was a political activist in his country with the opposition party platform Petite Asseline. Is it still the opposition party? It is, Your Honor. Because Moise was a member of the PPD, right? Jovenel Moise, the president who was a member of the PPD. But I guess you can't believe everything you read on the internet. There was some confusion in the briefing on the government side regarding whether or not the head of the platform Petite Asseline had been elected as president. In fact, he was not elected as president. He lost the election. And Jovenel Moise was a PhD candidate. Let me, I guess I ought to admit to you that I have read independently about what's going on in Haiti so that maybe I should have closed my eyes to Haiti. But living in a world where things are happening, I like to know what's going on. Yes, Your Honor. I completely understand. Archon Sanford fled Haiti after he endured repeated death threats by phone, threats against his family members, and the firing upon... We're familiar with the facts, so if you want to focus on the reopen motion. Your Honor, I'd like to focus on three issues in the motion to reopen. The first is the board's failure to undertake the necessary review of the evidence before it. The second is the board's abuse of discretion in finding that the murder of Petitioner's cousin did not constitute change country conditions. And third, the board's erroneous determination that Petitioner, his former counsel, did not 211729. I would like to address the issue of past persecution. The first issue to address, Your Honors, is the board's failure to properly review the evidence before it. Petitioner submitted 28 exhibits totaling some 150 pages of evidence regarding change country conditions in Haiti since Petitioner's individual hearing. The evidence documents a significant increase in political insecurity, violence, human rights abuses, leading to the assassination of the president in July of 2021, and the designation of Haiti for temporary protected status. Was the country report here previously unavailable? I'm sorry, Your Honor? Was the country report here previously unavailable? The country report, yes, at the time, if we go back to, we submitted the, I believe it was the 2019 country report in our submission to reopen. And what's the update say? The update that was just released yesterday? No, the update that you're saying that... It included a number of references to increase insecurity. Those are referenced in our Petitioner's brief. An upsurge in concerns on the part of the State Department with regard to arbitrary arrests and detentions, as well as firing on protesters, as I recall. Does it mention the specific political party here, Petit? It does not, Your Honor. And I would... Yes, Your Honor? Please, talk about the party, because it seems to me that the weak link in a bunch of your claims is the link to the government, to this being persecution. And I think in the initial proceedings, there may have been a bunch of evidence, maybe the board didn't consider it properly, but I didn't see... All I saw was his own suspicion that the police weren't going to take his case seriously. Was there anything in the evidence that was submitted that made these general problems attributable to the police? Your Honor, I think there are two factors. One is who was he fleeing, and the second is whether or not the government was willing or unwilling or unable to provide him with protection. In terms of his persecutors, the identity of the persecutors, they were anonymous, but they were clearly sympathizers or partisans with the PHT camp, which was the ruling regime. Because they basically said a number of times, unless you leave Platform Petit Dessalines and join the PHTK, you will become a victim. And those continued over a year, leading up to the destruction and the firing upon of his home. Right. So the political stuff may be a different category, but when you're talking about his cousin, the murdered cousin, we don't have any evidence of acquiescence. I mean, you said you wanted to make a point of that, but I don't see, he says, you know, there may be partisans who are behind it, but police came to the scene of the crime. Yes, Your Honor, I think it would be, I would like very much to address the issue about coming to the scene of the crime and whether or not that is sufficient to conclude that the government is in a position to provide protection. I understood he had a suspicion, the family didn't expect a true investigation, but there wasn't more than that. Your Honor, in the evidence, actually, I mean, there was very limited evidence provided by Petitioner's former counsel, which was, of course, the basis of our ineffective assistance of counsel claim in terms of the evidence regarding the government's willingness to investigate this. But there was a State Department report in that evidence that did demonstrate that the government was actually not doing a good job of investigating crimes like this, and impunity was quite... But not doing a good job of deliberately doing sham investigations or just doing sloppy investigations? They were not pursuing investigations that in any way provided accountability to those who actually were the victims of the crimes. You know, I don't think that's enough to supply it. It's like, this is a sham and the government's sake, but that's the difficulty with the family threats and the murdered cousin here. You don't, you know, you might have a point with the partisan stuff, but I just don't see how this is, this is the equivalent of the government is deliberately ignoring this. Your Honor, we have to, for purposes of withholding of removal, as distinct from Convention Against Torture, we need to show, Petitioner needs to show that the government is unable or unwilling to provide the protection that he needs. And I think it could cut by either way. Either the government is unwilling based on the part of the ruling government, it could be inability based on... I would, if I may, Your Honor, just point you to one case that was cited in Petitioner's brief, Rosales-Justo, which is coming out of the First Circuit, where the court took note of the country condition evidence and basically said, yes, an investigation may have been started, but the country condition evidence suggests that that was not going to go anywhere. That if you look at the country condition evidence in general, that it does, it shows impunity, it shows lack of accountability, and it shows that the investigation, and I put that in quotes because I think it deserves to be in quotes, was not going to actually result in protection. I actually think it matters why. I mean, we have this dictum about unable that comes from a Judge Reinhardt opinion, but it really, the unable or unwilling phrase in the statute is only about the refugees unable or unwilling to be in the country. So to impute it to the government would seem to require more than the government is doing its best and helpless. But I'm not sure that ultimately matters here. It does seem that... But conceding that there was no investigation, certainly because there was no investigation, that is an item that cannot be considered as weighing against the petition for relief. Because we're not, maybe you can't say that the government didn't want to investigate a crime involving a political opponent, but the fact that the government was unwilling to investigate anything cannot be used on the opposite side to say that there was no animus against the petitioner in refusal to investigate. Your Honor, yes, Your Honor, and I appreciate that. And I would like to add that there is quite a bit of evidence in the record regarding cooperation and collusion between the authorities and those, for example, the gangs who are, of course, notorious in Haiti. There's a very well done Harvard report that's included in the evidence regarding the collusion and cooperation that exists between the authorities and those who are trying to suppress political dissent. I don't think it's a particular stretch to conclude that given that situation in the country at this time, at that time, that this individual had fair reason not to believe that pursue an investigation to its proper end, but rather was showing up. They gave him a call. They showed up. There he was. There they were investigating. But in fact, that investigation was going to go no further. Why don't you talk about the political aspect here? I mean, you're on stronger ground because he's part of this opposition. And the BIA dismissed the assassination of the president as an incremental increase in political unrest and violence. Yes, sir. I mean, I think that's a very surprising conclusion on the part of the board. I think it goes in two parts. One is the, to what extent the board actually fully considered the evidence before it. And then second of all, of course, what it considers to be material change, significant, sufficient for purposes of reopening. The period, the time when petitioners submitted his motion to reopen, Haiti was in the midst of a constitutional crisis. And all the documents that post-date his hearing up to the point in time when he filed that motion to reopen talk about on the brink of crisis, upsurge in violence, institutional crisis with the sacking of three Supreme Court justices, as well as a consolidation of power, all of that culminating in the assassination of the president on July 7th. And that resulted, I would say quite directly, in the reissuance by the US government of temporary protected status for Haiti. They had done it in May, and then following the assassination, they did it again. And human rights abuses, security, politics, were all central to that decision by the US government. This is not to say, your honors, that TPS and protection relief, like asylum withholding, are coterminous, not at all. But certainly one can inform the other. And to suggest that this was just kind of business as usual in Haiti, I think is very misleading at best and just wrong, substantially wrong. Is there anything you want to focus on in connection with the initial petition for review, or you just like a rebuttal on that? I can wait for your rebuttal, your honor. Thank you. No, thank you. This side. May it please the court, my name is Christine. If you wish, that's your call. Do you wish to take your mask off or leave it on? Oh, sorry. It's up to you. It's entirely up to you. I keep forgetting. Yeah, whatever you prefer. May it please the court, my name is Christina Ziden, and I represent the attorney general. We ask the court to deny these consolidated petitions. Can I just, when I was looking at the IJ's opinion here, it just, something hit me instantly. The IJ says, after careful consideration of the totality of the circumstances and all relevant factors, the court finds the respondent's testimony credible. The respondent was responsive to questioning and forthcoming with information that was asked of him. As for corroboration, in the instant matter, the respondent provided the court with sufficient amount of documentary evidence to corroborate his testimony. Thus, the court finds that respondent has sufficiently corroborated his claim. That's on page four of the opinion. And then you go on, and it's like, he should have corroborated, he didn't. And it's like, what happened in these two pages? I mean, here's a guy that's forthcoming, and then you go on saying that he submitted no objective evidence to corroborate his claim, that he was harassed. Submitted no objective evidence to support any finding that the the respondent was inside the home at the time. I could go on and on. I mean, this is like Jekyll and Hyde. Right, your honor, some of the wording may be inartful here, and the use of corroboration to mean different things. But what the immigration judge was getting at here is that Mr. St. Ford did not provide evidence supporting some of his speculation on basically what happened to him and why it happened to him and who committed it. If somebody is being truthful and has corroborated whatever he's supposed to corroborate, to go on to the next page and say he didn't corroborate, and in fact we have cases that say that somebody's testimony alone can be enough to show, for example, past persecution or future persecution, what gives here? So somebody's testimony can be enough to show those aspects. But in this case, the agency concluded that there's a difference between someone being credible and having what they say be absolutely true. And so in this case, Mr. St. Ford was credible and the agency believed that he was subjectively afraid and that he subjectively believed in these theories on what happened to him and who committed these actions. And they also believed that he was corroborated. So not only was he true, but the facts reflected that he was being true. Isn't that what corroborated means? Well, that is what corroborated means, Your Honor. But what the agency was getting at here is that some of the more theoretical things that Mr. St. Ford testified about, as far as who burned his home down, Mr. St. Ford wasn't there when his home was burned down. Nobody saw the affiliations of the individuals who burned down his home or the identities. And so Mr. St. Ford had his beliefs about what happened, and he corroborated that he had those beliefs. As far as he was credible and he was forthcoming, there's no indication that he actually believed it was somebody else. But what the agency was getting at is that his beliefs weren't necessarily borne out by the evidence that was provided. I don't see... I think you just contradicted yourself. What you're saying, his beliefs were not borne out by the evidence provided. What evidence provided contradicted his beliefs? It's not that any of the evidence contradicted his beliefs, it's that he didn't have... Well, that's what you said. I mean, did you mean to say something else? I apologize, Your Honor. What I meant to say and what I meant was that the evidence was not sufficient to show who the individuals were who burned down his home or their affiliations. Okay. There was no analysis done by the IJ or the BIA of the Abdullahi case. That was from 2001, and it says that the IJ must identify facts for which is reasonable to expect corroboration. So, in effect, you've got to tell Mr. St. Ford, inquire as to whether the applicant has provided information corroborating those facts, and if he has not, three, analyze whether the applicant has adequately explained his failure to do so. That's not done here. I mean, is there anything in the record where the IJ says to Mr. St. Ford, I need corroboration of X, Y, and Z, and if you can't provide it, Y? I didn't see that. The IJ did not provide that, but the board did discuss that case law, Your Honor, and the board noted that Mr. St. Ford was found credible. The issue is that, I mean, it's more like what could Mr. St. Ford have provided if there was no evidence to back up his views? His views were based on speculation, and there might not be any documentary evidence to support speculation, views that are based on internal speculation. So, looking at the BIA opinion, there is a cite to Abdullahi, but the immigration judge expressly found the respondent credible, etc., and found that the respondent provided the court with sufficient amount of documentary evidence to corroborate and sufficiently corroborated his claim, and yet, again, I mean, they're ignoring that the opinion of the IJ is internally inconsistent. It just literally jumps out at you. Well, Your Honor, the opinion of the immigration judge, it would have been better if he'd used a different word other than corroborate, perhaps, to mean two different things. It is the right word. This is the official document that came out. Right, Your Honor. So, in this case, what the immigration judge and what the board were really getting at is that Mr. St. Ford provided evidence to corroborate that he subjectively believed that individuals from the PHTK had committed the burning of his home, and that he subjectively believed that the government's investigation of his claim was a sham, and that the government was not going to actually investigate, but that sort of evidence was not borne out by his, I mean, in this case, that sort of evidence was not borne out. These are things that he believed, but they are things that weren't supported by the evidence. For example, in terms of the government's willingness and ability to investigate his claim, he provided a report showing that the government investigated the one time that he chose to report it. Well, he provided a report that they showed up. There was nothing further. There's no proof of anything further being done or any question that he didn't provide all the information that he needed, but he had been threatened for a year by the PHTK in telephone calls, had he not? He had been threatened by unknown individuals who told him to leave his party, and he didn't report those threats. To leave his party and to join the PHTK. Right. Yes, your honor. One would surmise that the source then of those calls was the PHTK. Or their supporters. But it's also not, I mean, just because individuals who have a certain political viewpoint, just because those individuals might threaten somebody doesn't mean that that's automatically imputable to the government. And here the government, the government did visit his home, and it was a number of government officials who visited the site of his home being burned. They visited the site promptly, and they interviewed him. And Mr. Painter described the lack of investigation that was characteristic of the government at that time. Does DHS have any information on that topic? Mr. St. Ford testified that they came and the investigation was a sham. Now they said he was corroborated, right? Well, the agency said, the immigration judge actually did state at that point that the evidence contradicted that belief by Mr. St. Ford. So the immigration judge's decision stated, I believe, on the eighth page, it says that, let's see, it says that at the top, the mere fact that the matter was investigated by various government agents somewhat contradicted Mr. St. Ford's statement that his complaint was ignored and that the government did not wish to protect him. And did the government have any information on the tendency of the Haitian government in power to follow through on investigations? Not beyond what's in the record, but... Okay, and there's nothing in the record to establish that the government would have followed through on the investigation, is there? Well, Mr. St. Ford didn't really, aside from reporting the burning of his home, he didn't really provide the government with... Okay, but there's no reason for the board to say that the government would have followed up. Aren't they implying that in what you just read just now? That they are disregarding what Mr. St. Ford said because the government would have followed up, but there's no evidence that the government would have followed up. There's only Mr. St. Ford's evidence that they visited, they came once. Well, Mr. St. Ford has the burden in this case. Well, but he doesn't have the burden to argue against evidence that has not been presented. He has the burden to put in evidence and he has the burden, you know, he makes his statements, he has the burden supposedly to corroborate and she's told him he's corroborated. What else does he have to do? Well, the evidence... In fact, she's telling him, you've corroborated completely, you supported your statements in the next page, but you didn't corroborate. It's logically inconsistent. And when you say you didn't corroborate, there is no evidence in the record showing that the opposite is true, that the government would have investigated. There's no evidence that he was actually going to provide that. Well, Mr. St. Ford, the evidence that he did provide contradicted what he was saying about this being a sham investigation and about the government being unwilling and unable to, unwilling or unable, excuse me, to assist him. The government showed up promptly to the scene and investigate it. Mr. St. Ford could not provide perfect information on what took place and on who committed the crime. And this court has held in Galleas-Figueroa that a meaningful investigation does not require, excuse me, it's Galleas-Figueroa versus Attorney General 998 F. 3rd 77 in 2021. In this circuit, this court stated that... This court stated the lack of success in prosecuting gang members for past actions could be due to vagueness and deficiencies in police reports in that case. And in this case... Is that talking about Haiti? No. Okay. I mean, what evidence is there before the board, before the immigration judge here about Haiti and what would be investigated and what wouldn't be investigated? It seems to me that you are saying, well, Haiti would have investigated it, but there's no evidence to demonstrate that Haiti would have investigated it. Well, in this case, Haiti investigated it because there is the report provided by Mr. St. Ford himself. They came. And he said, you know, even if you say they came one day to investigate and nothing happened, I mean, where's the report? Where's the result? I have a feeling that you are, not you because you didn't write it, but that the immigration judge and the board of immigration appeals are providing a counter argument to Mr. St. Ford's without anyone producing evidence to support that counter argument. Well, the evidence in this case shows that, I mean, it shows that they did come out to investigate. Mr. St. Ford could not give them more evidence than what he stated. He wasn't present. But in this case, I mean, crimes aren't always solved. And I mean, on top of that, you've got the problem that I believe that at this hearing, Mr. St. Ford had his original attorney, right? That is correct. Who I find considerable mention in the record, which indicates to me that he was doing an insufficient, ineffective job. Right. Well, Your Honor, the board found in this case that there was no prejudice from the performance of former counsel to Mr. St. Ford. Okay. And that's now an issue before us to redetermine. So I'm less troubled, you know, the distinction between showing up versus, you know, are we inferring that they didn't do an investigation or presuming that they did? I'm more troubled that the board treated, you know, the assassination of a president as an incremental change in the political situation. It didn't even merit reopening. If this kind of unrest in 2021 in Haiti isn't enough to merit reopening, then what is? Thank you for asking that question, Your Honor. The, so part of what Mr. St. Ford relies on to show changed country conditions, and he made his motion to reopen prior to, I will say prior to the assassination of President Jovenel Moise. So some of the, so what, basically in this case, the board, whenever the State Department designated Haiti for temporary protected status, many of the conditions that were cited were conditions that had been long standing for at least a couple of years. So for example, I think that there was the statistic that said that there was a 300% increase in humanitarian violations, but that statistic ended in 2019. And so a lot of this information was information that was available by November 2020 when Mr. St. Ford had his individual hearing, his merits hearing. And so that's a lot of the information, a lot of the information that is shown by the temporary protected status designation, excuse me, and many of the other documents in the record is information that shows that these conditions had been building up in Haiti for some time. And so that's where the board, that's where the board gets the finding that this was an incremental change rather than a material change, a change that is material to Mr., and also that's significant here too, it needs to be a change that is material to Mr. St. Ford's claim. And that was part of the finding is that it was not, that established prima facie eligibility for the forms of relief that Mr. St. Ford sought. Okay, thank you. Mr. Pater. Thank you, your honors. I will, if I may, just briefly touch on three points. If we rule in your favor on the petition for review, we really don't have to deal with the reopening, do we? That's correct, your honor. Your honor, just to quickly on the investigation issue again, I think just to add two points to this discussion. One is there is the issue of fundamentally and substantively about the government's ability or willingness to actually provide protection. There's also just the question about the analysis. And my concern is that the immigration judge took this visit, saw a box, and checked it. We're done. But if you look at the case law that deals with these issues like Galeas-Figueroa, or if you look at from the board, matter of EAG, where they looked at investigations, it was a real substantive analysis where they looked at what's happening in the country. So for Galeas-Figueroa, the court found significant steps taken by the government to combat gang violence and public corruption. The court found deficiencies in the reports that petitioner's family had filed. In matter of EAG, with Honduras, another Honduras case, actually, had passed laws to protect citizens. They had investigated the deaths. They had actually arrested somebody. So it wasn't just, oh, the police came to the house. We're done. It was, let's look at the context. Let's look at the evidence. The second issue, Your Honors, I would argue is that it is not petitioner's responsibility at this stage to show that he would definitely be eligible for relief. All he needs to show at this stage for prima facie eligibility is a reasonable likelihood. And I believe, Your Honors, that he could satisfy that standard. Second issue, Your Honor, there's been a lot of talk about speculation. Petitioner's I think, Your Honor, with ISB Elias Zechariah, it's been very clear. Circumstantial evidence can prove a case. And in this case, we have individuals calling him, saying, leave your party, join our party, or you will be a victim. In other words, killed. Over a period of a year, armed men in the dead of night coming to his house with guns, firing on his house with guns, and then burning it down to the ground. I think if you took that circumstantial evidence, it's not very difficult, and it's not a leap at all, to conclude that the reason why he was threatened, the reason why his house was destroyed, was on account of, was related to those threats and related to his political opinion. With regard to the evidence, Your Honor, I would just also note that we find this throughout the immigration judge's decision. There's no objective evidence. There's no objective evidence. She says that about six times. And I, as you are well aware, Your Honor, Your Honor, an applicant's testimony can be enough evidence. And I would refer you to the concurrence in Quinteros, where the court held, I am at a, I think it was Judge McKee, I am at a loss as to what the BIA is talking about when they refer to this objective evidence, since they found that the applicant's testimony was credible. Finally, Your Honor, with regard to the designation of TPS, I do think it's worth mentioning that, of course, there's got to be some relationship between the events that preceded a motion to reopen and the events that ultimately happened. I mean, it's not like there's a huge disconnect in terms of the political environment in Haiti. But what happened when he initially filed his motion to reopen was the situation had grown significantly worse. It was really in the midst of a constitutional crisis. And the events that are laid out in the brief document that. In the temporary protected status designation, a huge, a very large proportion of the events are events that happened seven to eight months before that designation happened. And I would note, of course, we did, in fact, supplement our brief because the situation got much worse after the president was assassinated. Thank you very much. Thank you to both counsel for being